■ ROBERTA MOLTER et al., Appellants, v PETER GAFFNEY, Respondent. (And a Third-Party Action.) [710 NYS2d 654] —Rose, J. Appeal from a judgment of the Supreme Court (Cobb, J.), entered April 16, 1999 in Greene County, upon a verdict rendered in favor of plaintiff Roberta Molter.

Plaintiff Roberta Molter (hereinafter plaintiff), and her husband, derivatively, commenced this action to recover money damages for injuries she sustained in a motor vehicle accident on October 18, 1995 in the Town of Cairo, Greene County. At the conclusion of a trial in December 1998, a unanimous jury found defendant 100% liable and awarded plaintiff $10,000 for past pain and suffering, $12,500 for past lost wages, $27,500 for future pain and suffering, and $12,000 for future loss of wages. The jury made no award to plaintiff's husband for loss of her services. Plaintiffs' motion to set aside the verdict on the ground that these awards were inadequate was denied. Plaintiffs now appeal.

It is well settled that the amount awarded as damages for personal injuries is a factual question for the jury (*see, Preston v Young*, 239 AD2d 729, 732) and "considerable deference must be accorded to the jury with regard to the interpretation of the evidence * * * and assessments of credibility" (*Teller v Anzano*, 263 AD2d 647 [citations omitted]). To prevail on a motion to set aside a jury verdict, "plaintiffs are required to show that the preponderance of the evidence is so greatly contrary to the jury's verdict that it could not have been rendered by any fair interpretation of the evidence" (*McElroy v Yousuf*, 268 AD2d 733, 735; *see, Lolik v Big V Supermarkets*, 86 NY2d 744). Based upon our review of the record as a whole, we are not persuaded that the evidence here so preponderates or that the sums awarded by the jury "deviate[d] materially from what would be reasonable compensation" (CPLR 5501 [c]).

The evidence at trial established that plaintiff, a 45-year-old woman with a life expectancy of 35.8 years and a projected work life of 12.6 years, was working as a home-health aide at the time of the accident. Although plaintiff testified on direct examination that she had been working full time earning an average of $250 per week, her tax returns and statements on cross-examination made it clear that she had been working only part time from 1991 through 1995 and that her actual

earnings during that period were significantly less than $250 per week. As a result, there was a rational basis for the jury to conclude that plaintiff's earlier testimony was false or at least exaggerated. Similarly, it was brought to the jury's attention that plaintiff's income for 1995 was overstated because no business expenses, which had averaged 44% of her earnings in past years, had been deducted. Taking those expenses into account, the record evidence of her part-time earnings for 1991 through 1995 shows an average net income of approximately $3,900 per year from plaintiff's employment as a home-health aide. Thus, the jury's award of $12,500 for past lost wages for the roughly three-year period between the date of the accident and the date of the trial was amply supported by the evidence.

Review of the jury's other awards involves both the nature of plaintiff's injuries and the duration of the disability caused by those injuries. Also, it is in connection with those issues that both the conflicting expert medical evidence and plaintiff's weakened credibility offer support for the jury's relatively modest findings regarding pain and suffering and future lost wages.

Plaintiff's own witnesses offered conflicting opinions as to what injuries were attributable to the accident and her ability to perform sedentary work. Leonard Pickard, a neurologist, opined that plaintiff's cervical sprain was causally related to the accident, that her pain would continue indefinitely, but that she was able to return to sedentary work. Louis Di Giovanni, an orthopedic surgeon, testified that an osteophyte or bone spur in plaintiff's shoulder may have contributed to her pain and restricted motion, that he had found no evidence of blunt trauma and that "it remains to be seen" if she could perform some type of sedentary work. A second orthopedic surgeon, James Schuster, questioned whether plaintiff's shoulder injury was sustained in a motor vehicle accident and opined that she could do sedentary work despite her cervical impairment. Finally, Leona Liberty, a vocational rehabilitation counselor, opined that plaintiff would never again work as a home-health aide and could obtain no other gainful employment because she had no other skills and was too symptomatic.

Defendant presented contrary expert testimony as to the nature and extent of plaintiff's injuries. Albert Tannin, an orthopedic surgeon, opined that the osteophyte affecting plaintiff's right shoulder was preexisting, that the symptoms referable to her shoulder were not causally related to the accident and that she could return to sedentary work. Dominic Sette-Ducati, a neurologist, also testified that plaintiff did not injure her right shoulder in the accident and is capable of most employment not requiring lifting.

As it was the jury's province to assess this conflicting evidence, we cannot say that the jury's awards of $10,000 for past pain and suffering, $12,000 for future loss of wages and $27,500 for future pain and suffering were unreasonable or deviated materially from what would be reasonable compensation. Given the three-year time period and plaintiff's apparent exaggeration of other matters, the jury's award for past pain and suffering had a reasonable basis.

Since the future awards were calculated on the basis of a five-year period, the jury clearly rejected the testimonies of Di Giovanni and Liberty, and found that plaintiff would be able to return to some employment and would no longer experience significant pain or other impairment caused by the accident after that time. Although the award of $12,000 represents only three years of income at the rate plaintiff had earned from 1992 through 1995, the record includes evidence from which the jury could have concluded that she would be able to obtain more limited part-time work before the five years elapsed and could return to the same level of part-time work as before the accident within five years. Moreover, while the preponderance of the evidence indicated that plaintiff would not be able to return to her employment as a home-health aide, the jury could have concluded either that she would be able to perform equivalent work or that any further disability was unrelated to the accident.

The jury's award for future pain and suffering should be viewed in light of these same conclusions and the paucity of objective confirmation of plaintiff's subjective reports of pain. Under these circumstances, again the jury could have reasonably found that the injuries that plaintiff sustained in the motor vehicle accident would be resolved within five years after the trial and that any continuing pain or disability thereafter would be the result of an unrelated or preexisting condition of her shoulder (*see*, *Teller v Anzano*, 263 AD2d 647, 648, *supra*).

Finally, we find no reason to disturb the jury's decision not to award damages on the derivative claim. The testimonies of plaintiff and her husband were very brief on this issue. Plaintiff's husband testified that he and plaintiff can no longer go dancing, ride a motorcycle or "go out" as much. He also stated that her injuries necessitate that he lift and carry heavy objects for plaintiff and help her around the house more than he used to. Despite the claim that injuries sustained in the accident affected plaintiff's relationship with her husband, the jury could have reasonably inferred that he was not significantly deprived of plaintiff's support, companionship and ser-

vices, and that he was not required to provide extensive assistance for a lengthy period of time (see, id., at 650; *Preston v Young*, 239 AD2d 729, 733, *supra*).

Mercure, J. P., Peters, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, with costs.